IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CASE NO. 02:06cr144-WKW-SRW |
| | ) | |
| PAUL MEREZ GRAHAM | ) | |

## GOVERNMENT'S  RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully submits the government's response to the defendant' motion to suppress (Doc. 18), and addendum to motion to suppress (Doc. 30), as follows:

### Pertinent Fact

The government expects the testimony at a suppression hearing in this case to show the following pertinent facts bearing on whether evidence seized and statements made by defendant Paul Merez Graham on January 10, 2006 and July 14, 2006, are admissible.

On January 10, 2006, Corporal J.Tommy Conway ("Cpl. Conway"), with the Montgomery Police Department Special Operations Division Narcotics Bureau, received an anonymous call regarding the defendant Paul Merez Graham ("Graham").  The caller said a black male, Paul Graham, was en route to the Pizza Hut on Coliseum Boulevard in a small red rental car to deliver a large quantity of cocaine to a subject in an older model Cadillac.

Cpl. Conway and other members of the Special Operations Divisions went to the Pizza Hut on Coliseum Boulevard and set up surveillance to watch the parking lot.  At approximately 4:40 p.m., a small red car pulled into the parking lot from Coliseum Boulevard.  Cpl. Conway

saw the car pull to the rear of the business and park in a parking space.  The car remained in the parking space for a short period of time, then backed out of the parking space, circled the Pizza Hut and returned to the parking space.  Cpl. Conway saw that there were two black males in the car and neither person got out of the car.

After a short time Cpl. Conway and Captain Hughes ("Capt. Hughes") drove into the parking lot and pulled into a parking space beside the small red car.  Capt. Hughes got out of the unmarked police car and approached Graham, who was the driver of the red car.   Capt. Hughes saw a handgun between the seat and the center console beside Graham.

Cpl. Conway and Capt. Hughes removed the two people from the car for officer safety.  Cpl Conway saw a large quantity of a substance he believed to be marijuana, in plain view, on the floorboard of the car.  Both Graham and the passenger, Cleophus Dill, were taken into custody.

Sergeant A. Mercado ("Sgt. Mercado") drove the red car to the Special Operations Office.  During the search incident to a lawful arrest, Sgt. Mercado found approximately 83.0 grams of cocaine in the center console of the car.

According to Cpl. Conway, he verbally advised Graham of his Miranda rights.  According to Cpl. Conway, Graham agreed to talk to him.  Graham said the marijuana, handgun and cocaine belong to him and Cleophus Dill did not have anything to do with the items.  Graham agreed to cooperate with law enforcement in making a case against his supplier.  Based upon Graham's decision to cooperate with law enforcement, Graham was released from custody.

Later that same day Graham contacted Cpl. Conway by telephone and advised Conway that he had changed his mind and he did not want to cooperate.

2

On June 14, 2006, the grand jury for the Middle District of Alabama returned a three-count indictment against Graham, charging him with possession with intent to distribute cocaine and marijuana, possession of a firearm during a drug trafficking offense and being a  felon in possession of a firearm.

On July 14, 2006, deputies from the Gulf Coast Regional Task Force received information that Graham was a guest in a hotel in the Carmichael Road area.  After canvassing hotels around the Carmichael Road area, the desk manager identified Graham as a person staying at the Rodeway Inn, 1355 Eastern Boulevard.  After several employees identified Graham from a photograph as the person in Room 122, deputies went to Room 122 and knocked on the door. The deputies arrested Graham when he opened the door. Upon entering the room, deputies immediately observed in plain view a number of plastic bags containing suspected narcotics laying on the bed.  The deputies also saw a Ruger 9mm handgun and a large quantity of United States currency.  Graham was arrested pursuant to the arrest warrant returned by the grand jury on June 14, 2006.

A search incident to a lawful arrest revealed a large quantity of United States currency in Graham's left cargo pocket.  The following items were seized from Graham and Room 122: $12,343.00 in United States currency, approximately 3,434 grams of marijuana, approximately 133 grams of cocaine powder, approximately 4 grams of crack cocaine, seventy Ecstacy tablets, 20 Xanax tablets, and a Ruger 9mm handgun.

<u>Legal Issues</u>

On August 10, 2006, Graham moved to suppress the evidence seized during a search of his vehicle and statements made by Graham on January 10, 2006.  Graham argues that (1) the search of his car violated his Fourth Amendment right against unreasonable searches and seizures; (2) any statements subsequently made by Graham were fruits of the unreasonable search of the car driven by him; and (3) the statements made by him violated the Fifth Amendment. (Doc. 30, p. 1).

On September 12, 2006, Graham filed an addendum to his motion to suppress.  The addendum alleged Graham's arrest, search and any statements made by him on June 14, 2006, were the fruits of the unlawful search and statements Graham initially made on January 10, 2006, therefore the items seized and statements made by Graham on June 14, 2006, should also be inadmissible under the exclusionary rule. (Doc. 30).

**<u>Legal Argument</u>**

**I.      Probable Cause Established From An Anonymous Tip.**

Several issues are raised when a law enforcement officer searches a vehicle.  First Graham argues the officers violated his Fourth Amendment right to be free from unreasonable search and seizure.  The defendant argues his position in the context of an investigatory stop and a warrantless search.  To the contrary, this case should be viewed in the context of an anonymous tip which established probable cause and exigent circumstances to search Graham's vehicle.

Cpl. Conway received an anonymous tip that a small red rental car would arrive at the Pizza Hut on Coliseum Boulevard to deliver a large quantity of cocaine to a person driving an older model Cadillac. To verify the validity of the tipster information, Cpl. Conway and Sgt.

Hughes set up a surveillance to view the Pizza Hut parking area. A small red car did arrive and park in the Pizza Hut parking area. Two people were in the red car, however, neither occupant got out of the car to enter the Pizza Hut. After a short period of time, the red car pulled out of the parking space, circled the Pizza Hut and returned to its original position. Again, no one got out of the car to enter the Pizza Hut. In *Illinois v. Gates*, 462 U.S. 213, 238 and 241 (1983), the Supreme Court abandoned the "two-pronged test" in *Aguilar* and *Spinelli*, and replaced it with the "totality-of-the-circumstances" analysis which recognizes the value of corroboration of details of an informant's tip by independent police work." Information supplied by an anonymous tipster, is not alone sufficient to amount to probable cause, however, when corroborated by surveillance, is sufficient to support the issuance of a search warrant. *Gates* at 241. In the instant case, Cpl. Conway did not seek a search warrant.

In *Chambers v. Maroney*, 399 U.S. 42, 48 (1970), (citing *Carroll v. United States*, 267 U.S. 132 (1925)), the Supreme Court held that "automobiles ... may be searched without a warrant in circumstances that would not justify the search with a warrant of a house or office, provided that there is probable cause to believe that the car contains articles that the officer are entitled to seize." Following the holding in *Chambers* and *Carroll*, in the instant case, a vehicle may be searched without a warrant when probable cause exists to believe that contraband is in a vehicle. Two requirements must be met to justify a warrantless search of an automobile are: (1) the automobile must be readily mobile; and (2) there must be probable cause for the search. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). The officers were able to observe the small red car did arrive at the Pizza Hut on Coliseum Boulevard. The occupants of the car acted inconsistent with normal patrons of a pizza parlor. It was equally apparent that the

occupants were looking or waiting to meet someone as they parked, waited, circled the business, parked and waited again. The totality of the circumstances would lead a reasonable, trained, officer to believe this was indeed the small red car reported by the anonymous tipster. The officers approached the vehicle to speak to the occupants. *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006), held that officers are free, without any level of suspicion, to approach citizens on the street or in a public place and ask them questions, request proof of identification, and a consent to search. In this case, the officers had received a tip and were watching the activities of the small red car. *See also, Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382 (1991). In this case the officers merely approached the car.

Upon approaching the car, the officers saw a firearm between the driver's seat and the center console. Courts have held that "a police officer performing his lawful duties may direct and control–to some extent–the movement and location of persons nearby, even persons that the officer may have no reason to suspect of wrongdoing." *See United States v. Clark*, 337 F.3d 1282, 1287-87 (11th Cir. 2004), and *Maryland v. Wilson*, 519 U.S. 408, 415 (1997), (holding that a passenger may be required to exit a vehicle).    Cpl. Conway and Sgt. Hughes directed the occupants out of the car for officer safety. In this case, the firearm was within arms' reach of the driver and the passenger. After the driver and passenger were directed to get out of the vehicle, marijuana (contraband) was seen in plain view on the floorboard of the vehicle. When Sgt. Hughes saw marijuana on the floorboard, the officers had sufficient probable cause to make the arrest for possession of a controlled substance. In *Chambers,* the Supreme Court held that when there is probable cause to believe that contraband is in a vehicle, the vehicle may be searched without a warrant. *Chambers, at* 50-52. Courts have recognized that because exigent

6

circumstances exist in the mobility of cars, a warrantless search is justified. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). *See also Maryland v. Dyson,* 527 U.S. 465, 467 (1999); *United States v. Watts*, 329 F. Ed 1282, 1284 (11th Cir. 2003); and *United States v. Ross*, 456 U.S. 798, 809 (1982)( holding that if there [is] probable cause to search a vehicle, a warrantless search would not be deemed in contravention of the Fourth Amendment if the facts of the case would have justified a warrant., 'even though a warrant has not actually been obtained.'").

       In this instance, Cpl. Conway and Sgt. Hughes did not complete the search of the car until after the occupants were taken into custody and transported to the Special Operations Division. The car was driven to the Special Operations Division by Sgt. Mercado.  Sgt. Mercado searched the car and found approximately 83.0 grams of cocaine in the center console of the car.  The law is well settled that the  Fourth Amendment will allow officers to contemporaneously conduct a warrantless search of not only the occupant himself, but also the car immediately when the occupants of an automobile are the subject of a lawful arrest.  *New York v. Belton,* 453 U.S. 454, 460 (1981); *United States v. Gonzalez*, 71 F.3d 819, 862 (11th Cir. 1996); *United States v. Diaz-Lazaraza*, 981 F.2d 1216, 1222 (11th Cir. 1993). In this case, Graham was lawfully arrested for possession of marijuana.

       Upon arrival at the Special Operations Division, Cpl. Conway advised Graham of his *Miranda* rights.  According to Conway, Graham acknowledged his rights and agreed to talk to Conway.  Graham admitted that the marijuana, cocaine and firearm found in the car belong to him.  In addition, Graham advised Cpl. Conway that he wanted to cooperate with law enforcement to make a case against his supplier.  Based upon Graham's expressed intent to cooperate with law enforcement, Graham was released from custody.

Later on the same day, Graham telephoned Cpl. Conway and advised Conway that he no longer wanted to cooperate with law enforcement. An arrest warrant was issued against Graham based upon the indictment which was returned on June 14, 2006.

## II.  Execution of Arrest Warrant Pursuant an Indictment

On July 14, 2006, the arrest warrant was executed against Graham at the Roadway Inn, 1355 Eastern Boulevard, Room 122. Prior to executing the arrest warrant, a photograph of Graham was shown to the desk manager at the Inn. The desk manager recognized Graham as the person living in room 122. However, the desk manager advised the deputies that Graham was registered under a different name. The manager showed the photograph of Graham to the housekeeping employees, who also identified Graham as the person staying in room 122. Deputies knocked on the door, and Graham opened the door for the Deputies. In the room the Deputies immediately saw, in plain view on the bed, plastic bags containing suspected controlled substances. A Ruger 9mm handgun and a large quantity of United States currency was also on the bed in plain view. A large quantity of United States currency was also found in Graham's left cargo pocket.

Graham argues that his arrest on June 14, 2006, is the result of the evidence seized on January 10, 2006, which Graham believes is the fruits of an illegal search and seizure. Graham's argument is without merit. In *United States v. Bervaldi*, 226 F.3d 1256, 1267 (11th Cir. 2000), the Fourth Amendment is not violated when an arrest warrant is executed based upon probable cause that it is the suspect's dwelling (here, a hotel room), and the suspect is in the dwelling. Under *Payton v. New York*, 445 U.S. 573, at 603 (100 S.Ct. At 1388 (1980), the Court recognized that an arrest warrant for a suspect permitted officers to enter what they reasonably

8

believed was the suspect's residence when they reasonably believed the suspect was there, and it did not violate the Fourth Amendment.

In the instant case, Graham had been identified by the desk manager and housekeeping employees as the person staying in room 122. Moreover, the desk manager knew that the room had been rented in another person's name for Graham, that Graham had moved from a previous room to room 122. These facts would lead an officer to reasonably conclude that Graham was in room 122.

Graham was advised of his Miranda rights by Sgt. Mike Drummond. Thereafter, Graham admitted that he had been lying on the bed when the officers knocked on the door. Graham stated that the narcotics in the room had been purchased from an individual in Atlanta, Georgia. Graham signed a consent to search the room and his car, a Kia Sorento.

*United States v. Hidalgo*, 7 F.3d 1566, 1568 (11th Cir. 1993), held that law enforcement officers may request a suspect to consent to a search of his premises after the suspect has been advised of his Miranda rights. If the defendant does consent to the search, it does not violate Miranda since a consent to search is not an incriminating statement. In this case the defendant did consent to the search of his hotel room and his car.

<u>Conclusion</u>

For the reasons stated herein, the defendant's motion to suppress evidence seized and statements made on January 10, 2006, and on June 14, 2006, should be denied based upon well settled law that the Fourth Amendment is not violated when a search of a car is premised upon sufficient probable cause and the exigent mobility of a car. Moreover, officers may enter a suspect's dwelling when there is reasonable cause to believe that the suspect resides at the dwelling [hotel], and the officers reasonably believe that the suspect is in the dwelling.

Respectfully submitted on this 22nd day of September, 2006.

LEURA G. CANARY
UNITED STATES ATTORNEY

s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone:  (334) 223-7280
Fax:  (334) 223-7135
E-mail:  tommie.hardwick@usdoj.gov
ASB4152 W86T

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA            )
                                    )
vs.                                 )        CASE NO. 02:06cr144-WKW-SRW
                                    )
PAUL MEREZ GRAHAM                   )

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following: Thomas M. Goggans, Esq.

Respectfully submitted,

s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T